UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELANIE LEA PROCTOR,<br>　　Plaintiff,<br>　　v.<br>NATIONAL ARCHIVES AND RECORDS ADMINISTRATION,<br>　　Defendant. | Case No. 18-cv-05672-KAW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 20, 21 |

On September 17, 2018, Plaintiff Melanie Lea Proctor filed the instant Freedom of Information Act ("FOIA") case against Defendant National Archives and Records Administration. (Compl., Dkt. No. 1.) Pending before the Court are Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. (Plf.'s Mot., Dkt. No. 20; Def.'s Cross-Mot., Dkt. No. 21.)

Having considered the parties' filings, the relevant legal authorities, and the arguments made at the May 16, 2019 hearing, the Court GRANTS IN PART AND DENIES IN PART Plaintiff's motion for summary judgment, and GRANTS IN PART AND DENIES IN PART Defendant's cross-motion for summary judgment.

## I. BACKGROUND

On January 20, 1998, Plaintiff began working as the Confidential Assistant to the Assistant Secretary of Defense for Public Affairs. (Proctor Decl. ¶ 2, Dkt. No. 2.) Plaintiff's immediate predecessor was Monica Lewinsky. (Proctor Decl. ¶ 2.) After the story of Ms. Lewinsky's relationship with President William J. Clinton broke in the news, the Office of the Independent Counsel ("OIC") served a subpoena on the office in which Plaintiff worked. (Proctor Decl. ¶ 2.)

Several months later, the OIC requested to interview approximately fifteen employees at the Pentagon, including Plaintiff. (Proctor Decl. ¶ 4.) After Plaintiff obtained pro bono counsel, the OIC changed its request from an interview to the option of appearing before the grand jury convened in the Eastern District of Virginia, or submitting to a "grand jury style" deposition at the OIC's office, which would exclude Plaintiff's counsel. (Proctor Decl. ¶¶ 4-5.) To avoid the media outside the courthouse, Plaintiff agreed to the deposition. (Proctor Decl. ¶ 6.) On May 14, 1998, Plaintiff was deposed by two OIC attorneys at the OIC's office suite. (Proctor Decl. ¶ 7.) As a condition of the deposition, Plaintiff's counsel was excluded. (Proctor Decl. ¶ 7.) Plaintiff was later served with a grand jury subpoena. (Proctor Decl. ¶ 6, Exh. 1.)

On July 10, 2018, Plaintiff submitted a FOIA request to Defendant, seeking all records related to her. (Proctor Decl. ¶ 8.) After Defendant informed her that it would take eighteen months to process approximately 150 pages, Plaintiff narrowed her request to her eight-page deposition transcript. (Proctor Decl. ¶ 9.)

On July 26, 2018, Defendant denied Plaintiff's request. (Proctor Decl. ¶ 10, Exh. 4.) Defendant stated that all eight pages would be withheld "to preserve the secrecy of grand jury proceedings. . . ." (Proctor Decl., Exh. 4 at 1.) On August 6, 2018, Plaintiff appealed the denial of her request. (Proctor Decl. ¶ 11, Exh. 5.) On September 10, 2018, Defendant denied Plaintiff's appeal. (Proctor Decl. ¶ 12, Exh. 6.) Again, Defendant asserted that the deposition transcript was subject to Federal Rule of Criminal Procedure 6(e), noting that "the transcript explicitly indicates that your testimony was intended to be covered by Rule 6(e)." (Proctor Decl., Exh. 6 at 2.)

Plaintiff then filed the instant suit, seeking injunctive relief under FOIA. (Compl. ¶ 1.) On March 7, 2019, Plaintiff filed her motion for summary judgment. (Plf.'s Mot., Dkt. No. 20.) On March 28, 2019, Defendant filed its cross-motion for summary judgment. (Def.'s Mot., Dkt. No. 21.) On April 18, 2019, Plaintiff filed her opposition to Defendant's cross-motion for summary judgment. (Plf.'s Opp'n, Dkt. No. 22.) On April 25, 2019, Defendant filed its reply. (Def.'s Reply, Dkt. No. 23.)

## II. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part

2

of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when, after adequate discovery, there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law. *Id.*; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Southern Calif. Gas. Co. v. City of Santa Ana,* 336 F.3d 885, 888 (9th Cir. 2003).

### III. DISCUSSION

"FOIA 'was enacted to facilitate public access to Government documents." *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)). FOIA contains nine exemptions from disclosure. *See* 5 U.S.C. § 552(b)(1)-(9). "The government always bears the burden to show that a given document is covered by an exemption and should be withheld." *Rosenfeld v. United States Dep't of Justice*, 57 F.3d 803, 808 (9th Cir. 1995) (citing 5 U.S.C. § 552(a)(4)(B).) Furthermore, these exemptions must be considered with FOIA's goal of disclosure; thus, "courts must bear in mind that FOIA mandates a 'strong presumption in favor if disclosure,' and that the statutory exemptions, which are exclusive, are to be 'narrowly construed.'" *Nat'l Ass'n of Home Builders v. Norton*, 26, 32 (quoting *Ray*, 502 U.S. at 173; *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)).

Here, Defendant relies on Exemption 3, which concerns information that is "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). "[R]equests for documents related to grand jury investigations implicate FOIA's third exemption, because Rule 6(e) of the Federal Rules of Criminal Procedure prohibits government attorneys and others from 'disclosing a matter

3

occurring before the grand jury.'" *Lopez v. Dep't of Justice*, 393 F.3d 1345, 1349 (9th Cir. 2005) (quoting Fed. R. Crim. P. 6(e)(2)(B)).

The parties raise two issues. First, the parties dispute whether Plaintiff's deposition transcript is grand jury material. (Plf.'s Mot. at 5; Def.'s Cross-Mot. at 5.) Second, if Plaintiff's deposition transcript is grand jury material, the parties dispute whether the Court has the "inherent authority" to order the transcript's release. (Plf.'s Mot. at 8; Def.'s Cross-Mot. at 8.)

### A. Grand Jury Material

"Rule 6(e) imposes a general rule against disclosure of 'matters occurring before the grand jury' on government attorneys." *United States v. Dynavac, Inc.*, 6 F.3d 1407, 1411 (9th Cir. 1993.) This rule "recognize[s] that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979). For example, "if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony." *Id.* at 219. Likewise, "witnesses who appear[] before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducement." *Id.*

Rule 6(e), however, does not prohibit the disclosure of all records that are presented to the grand jury. Rather, it "'is intended only to protect against disclosure of what is said or takes place in the grand jury room . . . it is not the purpose of the Rule to foreclose from all future revelation to proper authorities the same information or documents which were presented to the grand jury.'" *Dynavac, Inc.*, 6 F.3d at 1411 (quoting *United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52, 54 (2d Cir. 1960)). Thus, "if a document is sought for its own sake rather than to learn what took place before the grand jury, and if its disclosure will not compromise the integrity of the grand jury process, Rule 6(e) does not prohibit its release." *Id.* at 1411-12.

Plaintiff argues that here, her deposition "would reveal nothing about the inner workings of the grand jury because the deposition did not take place in the presence of the grand jury." (Plf.'s Mot. at 7.) Instead, Plaintiff contends that her deposition was "simply information that may have been presented to the grand jury after it was gathered." (*Id.*)

4

The Court disagrees. Plaintiff is correct that not all information that is presented to a grand jury is subject to Rule 6(e). *See Citizens for Responsibility & Ethics in Wash. V. U.S. Dep't of Justice*, 746 F.3d 1082, 1100 (D.C. Cir. 2014) ("There is no *per se* rule against disclosure of any and all information which has reached the grand jury chambers, let alone any and all information which could reach the grand jury.") (internal quotations omitted). For example, "business records created for purposes independent of grand jury investigations, which have legitimate uses unrelated to the substance of the grand jury proceedings," may be disclosed without compromising the grand jury's deliberations. *Dynavac*, 6 F.3d at 1412. Courts, however, have found that testimony and other interviews obtained pursuant to grand jury subpoenas or by grand jury investigators are materials subject to secrecy under Rule 6(e).

For example, in *In re Special February, 1975 Grand Jury*, the target of a grand jury investigation was served with a grand jury subpoena. 662 F.2d 1232, 1234 (7th Cir. 1981). The target was advised by the Assistant U.S. Attorney ("AUSA") that he could be interviewed by the AUSA in lieu of appearing before the grand jury. *Id.* The target agreed to the interview, after which the AUSA prepared a "Memorandum to File," which memorialized admissions the target made during the interview. *Id.* at 1234, 1238. The target then pled guilty to a misdemeanor, and the government prepared a statement for the target to read to the grand jury, which would be the target's only testimony before the grand jury. *Id.* at 1234. The district court found that the "Memorandum to File" and the target's statement were disclosable, but that the transcript of the target reading the statement to the grand jury was not. *Id.* at 1237.

The Seventh Circuit reversed, finding that both the "Memorandum to File" and the target's statement were subject to Rule 6(e). *In re Special February, 1975 Grand Jury*, 662 F.2d at 1237-38. First, the Seventh Circuit explained that the target's statement was not an ordinary business document, but was "a statement prepared by the government as part of a plea agreement for the purpose of having it constitute the bulk of [his] testimony when read by him to the grand jury." *Id.* at 1237. The statement was also the result of an interview with the AUSA when the target "responded to a grand jury subpoena." *Id.* Thus, the statement was "too grand jury related to be artificially distinguished from a transcript of its reading to the grand jury." *Id.* at 1237-38.

Second, the Seventh Circuit found that the "Memorandum to File" did not contain information that the government learned from its prior non-grand jury investigation, but documented "the first government interview with [the target] when he appeared and was interviewed in response to the grand jury subpoena." *Id.* at 1238. The Seventh Circuit noted that the target had agreed to the interview to "avoid his actual grand jury appearance." *Id.* Thus, the Seventh Circuit was "not prepared to hold that the memorandum, although not read to the grand jury, is any less grand jury related than the [target] statement itself. The file memorandum was used to assist the government in preparation of the [target] statement which was read to the grand jury." *Id.* Thus, the Memorandum to File was also covered by Rule 6(e). *Id.*

Likewise, in *In re Grand Jury Proceedings (Daewoo)*, the district court found that "[i]nterviews occurring after the institution of the grand jury proceedings but before the return of the indictment may be matters occurring before the grand jury if they are closely related to the grand jury . . . ." 613 F. Supp. 672, 682 (D. Ore. 1985). Thus, because the agent who conducted the interviews at issue "was designated as a grand jury agent, any interviews conducted by him are matters occurring before the grand jury." *Id.*; *see also In re Application to Unseal Documents Related to the Indep. Counsel's 1998 Investigation of President Clinton*, 308 F. Supp. 3d 314, 334 (D.D.C. 2018) (finding that deposition testimony taken in lieu of live testimony before the grand jury was protected by Rule 6(e)); *United States v. Norian Corp.*, 709 Fed. Appx. 138, 141 (3d Cir. 2017) (finding that memoranda of interviews conducted in preparation for a grand jury investigation but not presented to the grand jury were subject to Rule 6(e) because "[t]he touchstone is not what has been examined by the grand jury, but what may reveal the essence of what takes place in the grand jury room") (internal quotation omitted); *In re Grand Jury Proceedings*, Misc. No. 98-228, 1998 U.S. Dist. LEXIS 17290, at *22 (D.D.C. Sept. 24, 1998) (finding that the testimony of Ms. Lewinsky, contained on a tape made under the direction of the OIC's attorneys and/or agents, was "evidence likely to be presented to the grand jury and therefore is protected from disclosure by Rule 6(e)").

Like the target in *In re Special February, 1975 Grand Jury*, Plaintiff's deposition was taken as part of the grand jury investigation. Although both the target interview and Plaintiff's

6

1 deposition took place outside of the presence of the grand jury, it was specifically for the purposes
2 of the grand jury investigation. Indeed, the OIC made clear to Plaintiff that her deposition was
3 part of the grand jury investigation, as she could either appear before the grand jury or submit to a
4 "grand jury style" deposition at the OIC's office. (Proctor Decl. ¶ 5.) Plaintiff then agreed to the
5 deposition to avoid testifying in front of the grand jury. (Proctor Decl. ¶ 6.) A grand jury
6 subpoena was later issued to Plaintiff, further demonstrating that Plaintiff's deposition was a part
7 of the grand jury's strategy and the direction of its investigation. (Proctor Decl. ¶ 6.) It was not
8 collected for a purpose independent of the grand jury investigation. *Contrast with Moore v.*
9 *Hartman*, 102 F. Supp. 3d 35, 108 (D.D.C. 2015) (finding that interview summaries that "were
10 derived from investigatory interviews conducted independently of the grand jury" were not
11 protected by Rule 6(e), even when presented to the grand jury).

Indeed, to focus solely on where testimony took place -- *i.e.*, in front of a grand jury vs. before grand jury investigators or prosecutors for the sole purpose of being presented to the grand jury -- would result in the disclosure of records that would compromise the grand jury processes. Witnesses who, like Plaintiff, choose to submit to a deposition rather than testifying before a grand jury would have their testimony subject to disclosure, revealing their identities and the direction of the grand jury investigation. This would discourage both witness cooperation and accommodations by investigators, knowing that testimony obtained specifically for a grand jury would be subject to disclosure simply because the witness was not questioned in the grand jury room.

Accordingly, the Court concludes that Plaintiff's deposition transcript is primarily grand jury material, and thus cannot be released per FOIA's Exemption 3. As Plaintiff points out in her opposition to Defendant's motion for summary judgment, however, there is information in her deposition transcript that would not appear to implicate grand jury processes, specifically the identities of the prosecutors and the court reporter. Additionally, Plaintiff's identity as the deposed witness is now a matter of public record, as there is no dispute that the transcript at issue involves Plaintiff's deposition. In fact, Plaintiff's FOIA request was ultimately limited only to her deposition transcript. (*See* Proctor Decl. ¶ 9; *see also* Crawford Decl. ¶ 27 (explaining that the

7

deposition transcript is grand jury material "[b]ased on a review of the records and the circumstances under which *Plaintiff's* testimony was provided") (emphasis added).) At the hearing, Defendant did not dispute that such information may be produced. Thus, the Court finds that such information is not covered by Rule 6(e).

### B. Inherent Authority

Next, the parties dispute whether the Court has the inherent authority to order the release of the transcript outside of the exceptions of Rule 6(e). In general, "district courts, as part of their supervisory authority over the grand juries that they have empaneled, are explicitly given the discretion to determine whether, if one or more of [Rule 6(e)'s] listed exceptions to grand jury secrecy apply, disclosure of records is appropriate." *In re Petition of Craig*, 131 F.3d 99, 102 (2d Cir. 1997). Some courts also recognize that "there are certain 'special circumstances' in which release of grand jury records is appropriate even outside of the boundaries of the rule." *Id.* Using this inherent authority, district courts may release grand jury materials even if none of Rule 6(e)'s exceptions to grand jury secrecy apply. *Id.*; *see also Carlson v. United States*, 837 F.3d 753, 758-59 (7th Cir. 2016); *In re Petition to Inspect and Copy Grand Jury Materials*, 735 F.2d 1261, 1272 (11th Cir. 1984) (finding that "a district court may act outside the strict bounds of Rule 6(e), in reliance upon its historic supervisory power").

Not all courts recognize that a district court has inherent authority to go outside of Rule 6(e)'s exceptions. *See McKeever v. Barr*, 920 F.3d 842, 850 (D.C. Cir. 2019) ("the district court has no authority outside Rule 6(e) to disclose grand jury matter"). The Court, however, need not decide whether inherent authority exists because ultimately, inherent authority arises out of the district court's "supervisory authority over the grand juries that *they have empaneled*." *In re Petition of Craig*, 131 F.3d at 102 (emphasis added). As the Seventh Circuit explained in *Carlson*, the grand jury is a part of the judicial process, such that the grand jury's minutes and transcripts are "necessarily records of the court." 837 F.3d at 758 (internal quotation omitted). This is because unlike privately produced civil discovery, grand jury materials "are created under the authority of the grand jury, and they remain at all times under the power of the court." *Id.* at 760. The "grand jury cannot create any materials without the power of the court being used to empanel

8

the grand jury and issue and enforce its subpoenas." *Id.* Thus, the grand jury materials are "produced under the supervision of the district court, and as a result they represent an exercise of the court's powers . . . ." *Id.*

As Defendant points out, the grand jury here was empaneled in the Eastern District of Virginia, not the Northern District of California. (Def.'s Cross-Mot. at 13.) Thus, the transcript was produced under the supervision of the Eastern District of Virginia district court, and is the record of that court. The inherent authority to release those materials therefore rests with the Eastern District of Virginia -- the empaneling court, from whose power the grand jury was able to issue and enforce its subpoenas -- not the Northern District of California.

To find otherwise would require this Court to release the records of another district court's records, a proposition for which Plaintiff offers no authority. In her papers, Plaintiff argues that because this is a FOIA action, venue is proper in this district. (Plf.'s Opp'n at 5.) Whether venue is proper for a FOIA action, however, is a separate matter from whether this Court has the inherent authority to release records created under the supervisory authority of a separate court. Likewise, whether the Court may release the transcript under FOIA is separate from whether the Court has inherent authority to release the records; as discussed above, the Court cannot release the transcript under FOIA because it falls within Exemption 3. Plaintiff cites to inherent authority as an *alternative* avenue for release from FOIA. At the hearing, Plaintiff essentially conceded this point.

Thus, the Court concludes that it lacks the inherent authority to release Plaintiff's deposition transcript.

### IV. CONCLUSION

For the reasons stated above, the Court GRANTS IN PART AND DENIES IN PART Plaintiff's motion for summary judgment, and GRANTS IN PART AND DENIES IN PART Defendant's cross-motion for summary judgment. The Court finds that Plaintiff's deposition transcript cannot be released per FOIA Exemption 3, except as to the identities of the prosecutors, the court reporter, and Plaintiff. The Court also finds that it does not have inherent authority to release the rest of Plaintiff's deposition transcript, namely the questions and answers.

9

Defendant shall produce a redacted version of Plaintiff's deposition transcript, which reveals the identities of the prosecutors, the court reporter, and Plaintiff.

IT IS SO ORDERED.

Dated: May 17, 2019

_____
KANDIS A. WESTMORE
United States Magistrate Judge